## Stout, Appellant, *v.* Stern.

*Usury—Usurious contracts—Privity of contract—Amount paid in excess of legal rate—Action for—Non-suit. Act of May 28, 1858, P. L. 622.*

Since the passage of the Act of May 28, 1858, P. L. 622, the taking of usury is not unlawful in this Commonwealth. A creditor may lawfully charge and receive excess interest though he cannot coerce its payment by suit or process, and the debtor may recover it back if the action is brought within six months after payment.

The right of action to recover back usury is vested in a borrower or debtor who has voluntarily paid it under some contract or obligation, or in some transaction in which a rate of interest for the use of money, exceeding that established by law, has been received.

Where, in an action of assumpsit, on an alleged usurious contract, to recover the amount paid in excess of the legal rate of interest, it appears that there was no privity of contract between the parties to the action, a non-suit is properly entered.

In order to enable one to enforce an obligation, privity of contract must exist between the parties.

Argued December 14, 1926. Appeal No. 80, October T., 1926, by plaintiff from judgment of M. C. Philadelphia County, November T., 1923, No. 425, in the case

480       STOUT, Appellant, v. STERN.

of Charles A. Stout, to the use of Simon C. Grossman,
v. Milton Stern.   Before PORTER, P. J. HENDERSON,
TREXLER, KELLER, LINN and CUNNINGHAM, JJ.   Af-
firmed.

Assumpsit on an alleged usurious contract to re-
cover the amount paid in excess of the legal rate of
interest.   Before BONNIWELL, J.

The facts are stated in the opinion of the Superior
Court.

A non-suit was entered by the Court.   Plaintiff ap-
pealed.

*Error assigned* was the refusal of plaintiff's mo-
tion to remove the non-suit.

*Frank Fogel,* for appellant.

*Samuel R. Rosenbaum,* for appellee.

OPINION BY CUNNINGHAM, J., March 3, 1927:
This is an appeal from the refusal of the trial judge
in the court below to take off a non-suit.   The action
was brought by Charles A. Stout, as the legal plaintiff,
against Milton Stern to "recover back" under the
provisions of the Act of May 28, 1858, P. L. 622, the
sum of $725 upon the theory that this amount had,
within six months prior to the beginning of the action,
been paid on behalf of the plaintiff to the defendant
in excess of the legal rate of interest in connection
with certain transactions relating to a proposed loan
of $7,000 by Stern to Stout, to be secured by a third
mortgage upon Stout's property.   More briefly stated,
the ground of the action was an alleged usurious con-
tract, under which the defendant, Stern, had received
$725 in excess of the legal rate of interest.   The rights

of the respective parties to a usurious contract may be thus expressed: "Since the passage of the Act of May 28, 1858, Pamph. L. 622, the taking of usury is not unlawful in this Commonwealth. The creditor may lawfully charge and receive excess of interest, though he cannot coerce its payment by suit or process, and the debtor may recover it back if the action is brought within six months after payment": Montague v. McDowell, 99 Pa. 265. The present action was brought to the use of Simon C. Grossman because under date of November 13, 1923, Stout assigned to Grossman all claims, demands and "right or rights of action," which he then held against Stern; but the fundamental question arising is whether, under the facts disclosed by the evidence, Stout then had any right of action against Stern. Reading the evidence in the light most favorable to the plaintiff, the facts appearing therefrom may be thus stated: Stout, the legal plaintiff, was the owner, in May, 1923, of a property at No. 5100 N. Broad St., Philadelphia, Pa., which was encumbered by two mortgages aggregating $32,000. Desiring to place a third mortgage on this property for $7,000 he applied to Simon C. Grossman, the use plaintiff, and engaged him to obtain a loan for this amount. In reply to the question whether he authorized Grossman to pay any bonus and, if so, how much, Stout testified "The amount was not clear. He said he would have to pay a bonus and I said to go ahead and pay it and I would fix him up at the settlement." Grossman, a member of the bar, testified that he inquired of one, Jesse H. Finn, also a member of the bar, through whom he had placed several other mortgages, whether he could procure the loan in question. Finn telephoned Milton Stern, the defendant, and told him that he had an application for a third mortgage in the sum of $7,000 on the premises referred to. Stern agreed to meet Finn the next day to examine the property and,

after an inspection, stated to Finn that he would place the loan for one year but "owing to the unusual risk" would like to have $725. Finn replied that he "would take it up with the applicant." The same day Finn reported to Grossman that he could place the loan but wanted $825, one hundred for his own work and the balance for the "party taking the mortgage." Grossman demurred at the amount but paid Finn the $825 demanded and Finn paid $725 to Stern. It does not appear that up to this time Stout had ever known or communicated with Finn or that Grossman had ever known Stern. Finn, on being asked for whom he was acting in the case, replied "It is hard to say. I believed my position to be one of bringing the mortgagor and mortgagee together, and nothing else." A mortgage in the sum of $7,000, with interest at six per cent, payable in bi-monthly installments, was executed by Stout and placed in the hands of a trust company for settlement, and Stern placed his check for $7,000 in the hands of the same company. When the date for settlement arrived it seems that the holder of a judgment against the property (which Stout had undertaken to have released) declined to execute a release and the settlement could not be made. The mortgage was therefore returned to Stout, and the check to Stern, by the trust company. Stout testified that he had agreed to the payment of the bonus but that he had not paid Grossman any money, nor did he ever pay anything to Stern, but felt himself "obligated to return" the money paid by Grossman to Finn. The provision of the Act of 1858, supra, is that "In all cases where any borrower or debtor shall heretofore, or hereafter, have voluntarily paid the whole debt or sum loaned, together with interest exceeding the lawful rate, no action to recover back any such excess shall be sustained in any court of this Commonwealth, unless the same shall have been commenced within six

months from and after the time of such payment."
The right of action to "recover back" usury is vested
in a borrower or debtor who has voluntarily paid it
under some contract or obligation, or in some transac-
tion, under or in which a rate of interest for the use
of money exceeding that established by law has been
received. The underlying difficulty with the plaintiff's
case is that the testimony shows that neither Stout nor
his representative and agent to procure the loan, Gross-
man, paid anything voluntarily or otherwise to the de-
fendant, Stern. There is nothing in the evidence from
which a jury could find that Finn was Stout's "duly
authorized agent" as averred in the statement of
claim. This seems to be a case of a demand for an
exorbitant commission by Finn, as a broker, for pro-
curing the loan, which commission he divided with the
person he was representing, Stern. We cannot see,
as we read the testimony, that there was any privity
of contract between Stout and Stern. Since the Act
of 1858, supra, the taking of usury is not unlawful but
an enforcible obligation to pay it back continues for
six months. In order, however, to enable one to en-
force an obligation there must exist between him and
the other party what is known in law as privity: 6 R.
C. L., p. 881. Under the view we have taken of this
case it is unnecessary to consider the question whether
the action was too late. It is true that the defendant
has $725 of the money paid by Grossman to Finn for
which he has given no valuable consideration, but a
majority of the members of this court are of opinion
that, whatever rights of action may possibly exist
under the facts in this case, no such right was shown
to exist as between the present parties. It follows that
the non-suit was properly entered.

The assignment of error is overruled and the judg-
ment affirmed.